UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IDA MOLAYEM, MICHAEL GATHEN, and KEITH WHITE, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | |
| -against- | 24-CV-4816 (JGLC) |
| RALPH LAUREN CORPORATION, RALPH LAUREN RETAIL, INC., and DOES 1-50, inclusive, | **<u>OPINION AND ORDER</u>** |
| Defendants. | |

JESSICA G. L. CLARKE, United States District Judge:

Ralph Lauren outlet stores sell products marked at significant discounts. Plaintiffs,

shoppers at the outlet stores, allege that these discounts are false—namely, that the items were

never offered at their original prices, and the discounts deceptively induced consumers to

purchase the goods on the belief that they had scored a bargain. Plaintiffs have brought consumer

rights claims against Ralph Lauren under New York, California, and Oregon law, as well as

claims for equitable relief. Ralph Lauren argues that Plaintiffs never checked their mainline

stores and other product channels, where the items were offered for full price. On this and other

grounds, Ralph Lauren moves to dismiss all claims. For the reasons stated herein, that motion is

GRANTED with respect to the New York claims, but DENIED with respect to the California and

Oregon claims.

**BACKGROUND**

The following facts are, unless otherwise noted, taken from the amended

complaint (ECF No. 27, the "First Amended Complaint" or the "FAC") and presumed to be true

for the purposes of the instant motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Plaintiffs Ida Molayem, Michael Gathen, and Keith White (collectively, "Plaintiffs") are consumers residing in California, New York, and Oregon respectively. FAC ¶¶ 55, 59, 63. Each alleges that at some point, they visited a Ralph Lauren Polo Factory Store in their respective states in late 2023. *Id.* During these visits, Plaintiffs noticed numerous signs within the Polo Factory Store advertising various "__% Off" discounts on items throughout the store. *Id.* ¶¶ 56, 60, 64. These signs were accompanied by what purported to be "original" prices on their price tags. *Id.* ¶¶ 57, 61, 65. Plaintiffs purchased these "discounted" items, believing that they were receiving significant discounts on each item. *Id.* Plaintiffs allege they would not have made the purchases were it not for the significant bargain they believed they were receiving. *Id.* Plaintiffs now bring claims for violation of California's Unfair Competition Law ("UCL"), California's Consumers Legal Remedies Act ("CLRA"), New York Consumer Protection From Deceptive Acts and Practices Act ("NYDAPA"), New York False Advertising Law ("NYFAA"), and Oregon's Unlawful Trade Practices Act ("UTPA"). FAC ¶¶ 101–172. Plaintiffs seek damages as well as equitable relief. *Id.* at 64–65.

This lawsuit was originally brought on June 25, 2024, by Plaintiff Sarah Ratra, who has since been dismissed from the case. *See* ECF No. 1. In that complaint, Plaintiff described that counsel has been investigating Polo Factory outlet stores since February 2022. ECF No. 1 at 17–18. This investigation found that items remained continuously discounted on a daily basis throughout the investigation period, suggesting that Polo Factory merchandise was never offered for sale at the full "original" price at the Polo Factory outlet stores. *Id.* ¶ 31.

On September 18, 2024, Defendants filed a motion to dismiss, which argued, among other things, that Plaintiff Sarah Ratra had failed to include allegations of a sufficient pre-complaint investigation, including an investigation of other product channels, as required under consumer laws. *See* ECF No. 23; ECF No. 24 at 10–14. On September 30, 2024, Plaintiffs subsequently filed their First Amended Complaint, which is now the operative complaint. ECF No. 27. The FAC replaces Ratra with the present three plaintiffs, and further alleges that in September 2024, Plaintiffs' counsel investigated the mainline Ralph Lauren retail stores and websites. *See id.* ¶¶ 32–38. These mainline investigations found that only one of the sixteen items purchased by Plaintiffs could be found in the mainline Ralph Lauren e-commerce store, ralphlauren.com. *Id.* ¶ 39. Although Defendants represent that former Plaintiff Ratra's two items were in fact sold on the mainline website at full price, ECF No. 34 at 6, the FAC alleges that Defendants intentionally obfuscate consumers' ability to cross-reference merchandise sold at the mainline stores and at the outlet stores. *Id.* ¶¶ 43–49. Plaintiffs further allege that their investigation suggests the mainline store and outlet stores sell separate and exclusive product lines. *Id.* ¶ 50. Plaintiffs offer economic analysis through a regression model comparing the reference price and the sales price, and accounting for several variable factors such as the clothing type and target demographic. *Id.* ¶¶ 67–81. Plaintiffs allege that their resulting model reflects that for every $1 increase in reference price, there is a resulting increase of $0.6965 in sales price. *Id.* ¶ 74.

Defendants once more moved to dismiss this case on November 18, 2024. ECF No. 33, 34 ("Mot."). Plaintiffs oppose. ECF No. 37 ("Opp.").

**LEGAL STANDARD**

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

**DISCUSSION**

This section proceeds in three parts. First, the Court determines that Plaintiffs have not adequately alleged injury under New York law. Second, the Court finds that Plaintiffs have met the Rule 9(b) pleading standard to proceed on California and Oregon claims. And finally, the Court concludes that, at this preliminary stage, Plaintiffs have standing to seek injunctive and equitable relief.

**I.    Plaintiffs Have Not Adequately Alleged Injury Under New York Law**

Plaintiffs' New York claims allege violations of Sections 349 and 350 of the New York General Business Law. These provisions prohibit businesses from engaging in deceptive acts or

practices and false advertising. *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 461 (S.D.N.Y. 2020). "To state a claim under either section [349 or 350], a plaintiff must plead facts to show that (1) the challenged transaction was consumer-oriented; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." *Id.* (internal quotation marks and citation omitted). However, "New York law does not recognize an injury based on [a defendant's] deception itself—the fact that [p]laintiff was deceived is not, standing alone, an 'actual injury.'" *Belcastro v. Burberry Ltd.,* No. 16-CV-1080 (VEC), 2017 WL 744596, at *3 (S.D.N.Y. Feb. 13, 2017); *see also Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 679 (S.D.N.Y. 2012) (observing that where the alleged injury is identical to the deception itself, a claim under Section 349 is not cognizable). The injury requirement of the statutes requires allegations that a plaintiff, "on account of a materially misleading practice, . . . purchased a product and did not receive the full value of her purchase." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015).

To demonstrate they did not receive the "full value" of their purchases, Plaintiffs here pursue a price premium theory of injury, which is when a misrepresentation causes a plaintiff to overpay for a product. "To properly allege a price premium injury, plaintiff must show either that because of a misrepresentation the plaintiff received a good worth less than what he paid for, i.e., a good of inferior quality, or that because of a misrepresentation the plaintiff paid an inflated price." *Binder*, 2024 WL 2978506, at *7 (cleaned up). Courts in this district have held that, for an overpayment price premium theory, the "full value" of a purchase must be objectively determined; that is, subjective valuations of a product are not sufficient to allege injury. *See Binder v. Premium Brands Opco LLC,* No. 23-CV-3939 (NRB), 2024 WL 2978506, at *7 (S.D.N.Y. June 11, 2024) (collecting cases). In other words, it is insufficient for a plaintiff to

merely allege that felt that he overpaid. *See Binder*, 2024 WL 2978506, at *7 (citing *Belcastro v. Burberry Ltd.*, No. 16-CV-1080 (VEC), 2017 WL 5991782, at *4 (S.D.N.Y. Dec. 1, 2017)). Even allegations that "but for the mistaken belief that they were getting a bargain, Plaintiffs would not have made their purchases at all" are not enough to meet the objectivity requirement. *See Irvine v. Kate Spade & Co.*, 16-CV-7300 (JMF), 2017 WL 4326538, at *4 (S.D.N.Y. Sept. 28, 2017). "[S]ubjective disappointment . . . is not a cognizable form of injury." *Id.* Because of this, "courts in this District have repeatedly rejected the very theory of injury alleged by plaintiffs in other outlet store cases, where, as here, a plaintiff believed she was getting a bargain based on a fictitious 'original price' and seeks compensation for her subjective disappointment upon discovering that there was never any bargain at all." *Binder*, 2024 WL 2978506, at *6.

Some courts acknowledge that it is possible to present an objective measure of overcharge in a false discounting case. *See, e.g., DaCorta v. AM Retail Grp., Inc.*, No. 16-CV-1748 (NSR), 2018 WL 557909, at *9 (S.D.N.Y. Jan. 23, 2018) (suggesting that plaintiff's Section 349 and 350 claims might have survived that if allegations reflected "the objective quality and/or value of the product and how it failed to live up to its marketing"); *Kate Spade,* 2017 WL 4326538, at *4 (suggesting that allegations that a store sells the same merchandise without deceptive discounts would be sufficient). In *Binder*, plaintiffs attempted to show this objective measure of overcharge by providing economic regression analysis on the causal relationship between defendant's false pricing scheme and plaintiffs' corresponding payment. *See Binder*, 2024 WL 2978506, at *8. However, the Court found that "while the analysis may be able to establish an unsurprising correlation between these prices—that as reference prices are increased, so too are sale prices—it clearly cannot establish the type of causal relationship plaintiffs claim it does: that sale prices were increased because of an increase in the reference prices." *Id.* at *8.

*Binder* suggests that an objective measure must reflect "the real market value of defendant's products or the price those products would have sold for absent the allegedly false reference price." *Id.*

Here, Plaintiffs once again offer economic analysis through a regression model comparing the reference price and the sales price. FAC ¶¶ 67–81. Plaintiffs allege that their resulting model reflects that for every $1 increase in reference price, there is a resulting increase of $0.6965 in sales price. *Id.* ¶ 74. Plaintiffs attempt to distinguish this case from *Binder* by emphasizing that this analysis accounts for 11 variables that impact Defendant's pricing, including product type and target demographic. *Id.* ¶ 74. But the same complaint that the *Binder* court dismissed also accounted for variable factors. *See* Complaint at ¶ 65, *Binder et al. v. Sycamore Partners Management, L.P. et al.,* No. 23-CV-3939 (NRB) (S.D.N.Y. May 10, 2023), ECF No. 1. Nonetheless, the *Binder* court found this regression analysis insufficient to show an objective measure of overcharge. *Binder,* 2024 WL 2978506, at *8.

This Court agrees. Indeed, there remains a large question as to whether *any* regression model alone can identify some real market value of a falsely discounted product, especially when product value itself can be inherently subjective. And Plaintiff fails to explain how any additional factors considered in this case, but not *Binder*, would overcome the conclusion in that case. As *Binder* notes, "establishing a true market price for exclusively made products may present significant, if not insurmountable, challenges in most cases." *Binder,* 2024 WL 2978506, at *8 n.12. Without allegations of the same or substantially similar product actually being sold at a different price, "plaintiffs' theory . . . is simply too speculative for the Court to accept." *Binder,* 2024 WL 2978506, at *9. Plaintiffs' New York claims are dismissed.

II.     **Plaintiffs Have Adequately Pled California and Oregon Claims**

In addition to the New York claims, Plaintiffs further allege violations of California's CLRA and UCL and violations of Oregon's UTPA. California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice . . . ." CAL. BUS. & PROF. CODE § 17200 (West 2025). California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices . . . ." CAL. CIV. CODE § 1770(a) (West 2025). Oregon's UTPA prohibits unlawful trade practices through misrepresentations and failures to disclose. *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 115 (2015); *see* OR. REV. STAT. § 646.607 (West 2025) (setting forth unlawful trade practices involving unconscionable tactics and failure to deliver as promised or failure to refund for undelivered goods and services); *id.* § 646.608 (listing myriad of ways in which a person engages in an "unlawful practice" under the statute).

Allegations under the UCL, CLRA, and UTPA are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL); *Granados v. OnPoint Cmty. Credit Union*, No. 21-CV-847(MHS), 2023 WL 3570039, at *7 (D. Or. May 18, 2023) (holding that Rule 9(b)'s heightened pleading standards apply to claims for violations of the UTPA). In other words, a complaint "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). That includes "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (cleaned up). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just

deny that they have done anything wrong." *Dennis v. Ralph Lauren Corp.*, No. 16-CV-1056-WQH-BGS, 2016 WL 7387356, at *3 (S.D. Cal. Dec. 20, 2016) ("*Ralph Lauren I*") (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

Defendants contend that Plaintiffs do not plead a deceptive act or practice under the required Rule 9(b) pleading standards. Mot. at 12–16. The Court disagrees. Plaintiffs have described with particularity the locations of the stores that sold the offending products, the approximate date on which the products were purchased, and their prices. FAC ¶¶ 55–66. Plaintiffs detail why they believe these prices to be deceptive beginning with an investigation of the Polo Factory outlet stores starting in February 2022. *Id.* ¶ 32. The investigation demonstrated that thousands of items remain continuously discounted throughout the investigation period, including items purchased by Plaintiffs, and suggest that the items were never offered for sale at a full "original" price. *Id.* ¶ 34. As examined above, Plaintiffs have also described economic analysis used to calculate how these pricing practices were deceptive and harmful. *Id.* ¶¶ 67–81.

Defendants' main objection to Plaintiffs' allegations is their failure to conduct a pre-suit investigation into Ralph Lauren mainline stores and other channels that may have sold the products for full price. Mot. at 12–14. Indeed, Rule 9(b) typically requires a plaintiff to conduct a pre-suit investigation "in sufficient depth to assure that the charge of fraud is responsible and supported." *Fisher v. Eddie Bauer LLC*, No. 19-CV-857 (JM), 2019 WL 9467922, at *5 (S.D. Cal. Oct. 18, 2019). Defendants rely mainly on *Fisher* and *Ralph Lauren I* to argue that Plaintiffs' pre-suit investigation was not sufficient. In *Fisher,* the Court dismissed the complaint after finding that the plaintiff, "in addition to failing to search anywhere except a single store . . . [did] not explain how he knew the items he purchased were 'direct to outlet' or how Eddie Bauer 'direct to outlet' items can be identified." *Id.* at *6. Likewise, in *Ralph Lauren I,* the Court

dismissed the first amended complaint because the plaintiff did not allege the discounted

products were unavailable at the original price at "other locations offering Ralph Lauren

products, such as the Polo retail stores, high-end department stores, and related online stores

identified in the [first amended complaint]." *Ralph Lauren I*, 2016 WL 7387356, at *4. The

*Ralph Lauren I* court later permitted plaintiffs to proceed after plaintiffs amended the complaint a

second time, alleging, based on a pre-suit investigation of other Ralph Lauren stores, the

discounted products were not offered at the original price anywhere. *Dennis v. Ralph Lauren

Corp.*, No. 16-CV-1056 (WQH), 2017 WL 3732103, at *5 (S.D. Cal. Aug. 29, 2017) ("*Ralph

Lauren II*").

    Here, Plaintiffs did conduct a pre-suit investigation into various outlet stores—just not a

pre-suit investigation into other channels, such as the mainline stores and online stores. The

Court agrees that Plaintiffs' pre-suit investigation into the outlet stores alone was deficient,

especially because, as Plaintiffs admit, a subsequent investigation into the mainline stores

revealed that at least one of the sixteen products at issue was offered in the mainline store. FAC

¶ 39. That said, Plaintiffs did perform what appears to be a thorough investigation into the

mainline stores and online stores in or after September 2024. *Id.* ¶¶ 35–54. According to

Plaintiffs, this investigation suggests many discounted outlet items, including most of the ones

Plaintiffs purchased, are exclusive to the outlet stores. *Id.* ¶¶ 51–52.

    Given that Plaintiffs eventually investigated other product channels and found

information corroborating their claims of deception, the Court is hesitant to dismiss the

complaint. While this investigation was not "pre-suit" because it occurred after the filing of the

first motion to dismiss, neither was it a part of the discovery process—meaning the information

did not come out of an improperly brought claim. There appears to be little prejudice to the

Defendants, and in any case, the purpose of the Rule 9(b) pleading standard is "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged," which Plaintiffs have done. *Ralph Lauren I,* 2016 WL 7387356, at *3 (internal citation omitted). Moreover, some courts have noted that the pre-suit investigation is not a strict requirement in these cases. *See Safransky v. Fossil Grp., Inc.,* No. 17-CV-1865 (MMA), 2018 WL 1726620, at *12 (S.D. Cal. Apr. 9, 2018) ("Plaintiff is not required to plead that he has conducted a pre-suit investigation—or include the results of such investigations—in every case, particularly where the information is not within the personal knowledge of the pleader.") (cleaned up); *P&P Marketing, Inc. v. Ditton,* 746 F. Supp. 1354, 1363 (N.D. Ill. 1990) ("Rule 9(b) requirements should not be interpreted to require a pleading to go beyond the specifics of a fraudulent scheme and demonstrate compliance with Rule 11 investigation requirements."); *accord Stathakos v. Columbia Sportswear Co.,* No. 15-CV-04543(YGR), 2016 WL 1730001, at *4 (N.D. Cal. May 2, 2016).

For these reasons, the Court finds that Plaintiffs have adequately pled, with particularity, UCL, CLRA, and UTPA claims.

## III.    Plaintiffs May Seek Injunctive and Equitable Relief

Plaintiffs, in this action, seek injunctive and equitable relief. FAC at 64–65. Because requests under New York law are mooted by the dismissal of the New York law claims, the Court considers these requests only under California and Oregon law. The California UCL is limited to injunctive relief and restitution. *Eason v. Roman Cath. Bishop of San Diego*, 414 F. Supp. 3d 1276, 1281 (S.D. Cal. 2019). The CLRA, meanwhile, "provides for equitable relief and for damages." *Castillo v. Prime Hydration LLC*, 748 F. Supp. 3d 757, 773 (N.D. Cal. 2024). And under the Oregon UTPA, the court may "provide any equitable relief the court considers

necessary or proper." *Fauley v. Washington Mut. Bank FA*, No. 3:13-CV-00581-AC, 2014 WL 1217852, at *4 (D. Or. Mar. 21, 2014) (citing OR. REV. STAT. Ann. § 646.638(1) (West 2025)).

### A.  Plaintiffs Have Standing to Seek Injunctive Relief

Plaintiffs allege a desire to shop at Polo Factory Stores in the future, and state that they may not be able to do so if the false discounting persists. *Id.* ¶¶ 82–83. This raises the "threshold question" of whether Plaintiffs have constitutional standing to seek injunctive relief for future injuries. *Binder*, 2024 WL 2978506, at *3 (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006)). Although the parties cite to state law in their briefs, "standing in federal court is a question of federal law, not state law." *Hollingsworth v. Perry,* 570 U.S. 693, 715 (2013); *see also Ralph Lauren II*, 2017 WL 3732103, at *8 (applying federal law to issue of whether plaintiffs have standing to seek injunctive relief).

To seek injunctive relief, a plaintiff "must show the three familiar elements of standing: injury in fact, causation, and redressability." *Cacchillo v. Insmed, Inc*., 638 F.3d 401, 404 (2d Cir. 2011). "To satisfy the injury requirement when seeking injunctive relief, 'a plaintiff cannot rely on a past injury alone.'" *Binder*, 2024 WL 2978506, at *3 (citing *Buonasera v. Honest Co*., 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016)). Instead, a plaintiff must show a "real or immediate threat of injury[.]" *Id.* (citing *Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 239 (2d Cir. 2016)).

In *Binder,* the Court found that plaintiffs lacked standing to pursue injunctive relief. *Id.* at *3–4. This conclusion was premised on the finding that in "this specific context, where plaintiffs are aware of the allegedly deceptive pricing practices that they challenge, it undercuts any inference that they will be deceived by those practices again in the future." *Id*. at *3. Likewise, in *Ralph Lauren II,* the Court found that plaintiffs lacked standing to seek injunctive relief because

the allegations were "insufficient to suggest that [the] [p]laintiff would purchase another Polo Ralph Lauren retail item in the future." *Ralph Lauren II*, 2017 WL 3732103, at *8.

The allegations here are distinguishable from *Binder* and *Ralph Lauren II.* Here, Plaintiffs have alleged that they *would* repurchase at Ralph Lauren outlets, but cannot because of the deceptive pricing. In other words, the immediate harm alleged by Plaintiffs is the denial of their ability to shop at the outlets. The Ninth Circuit has held "that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). In this case, money damages "would not necessarily be sufficient to remedy this alleged harm insofar as [Plaintiffs] allege[] that [they] would like to return to the [Ralph Lauren] outlet but [are] deterred from doing so by [Ralph Lauren]'s alleged pricing scheme. *Adams v. Cole Haan, LLC*, No. 20-CV-913 (JWH), 2021 WL 4907248, at *4 (C.D. Cal. Mar. 1, 2021).

Plaintiffs' allegations are sufficient to pursue injunctive relief under California and Oregan law.

### B.  Plaintiffs May Pursue Equitable Restitution

To pursue equitable claims under the UCL, CLRA, and UTPA, plaintiffs must establish that they lack an adequate remedy at law. *See, e.g.*, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *Clark v. Eddie Bauer LLC*, No. 21-35334, 2024 WL 177755, at *2 (9th Cir. Jan. 17, 2024)). Accordingly, plaintiffs must "explain *why* legal remedies are inadequate in their pleading." *Julian v. TTE Tech., Inc.,* No. 20-CV-2857 (EMC), 2020 WL 6743912, at *4

(N.D. Cal. Nov. 17, 2020). Conclusory allegations are not sufficient. *Hubbard v. Google LLC,* No. 19-CV-7016 (SVK), 2024 WL 3302066, at \*4 (N.D. Cal. July 1, 2024).

Here, Plaintiffs allege that they lack an adequate remedy at law with respect to restitution for several reasons. First, Plaintiffs assert that legal damages are inadequate because they do not know whether the model for actual damages will be viable or cover the harm suffered. FAC ¶ 85. Second, Plaintiffs assert that different statutes of limitations for the UCL and CLRA claims means dismissal of the UCL claims would wipe out an entire year's worth of monetary recovery for the California class. *Id.* ¶ 86. Finally, Plaintiffs allege that the UCL sweeps more broadly than the CLRA such that legal damages under the CLRA may be inadequate. *Id.* ¶ 87.

These allegations have explained "*why* legal remedies are inadequate . . . ." *Julian*, 2020 WL 6743912, at \*4. Moreover, "there is an 'intra-circuit split' on the issue of whether it is appropriate to dismiss UCL claims at the pleading stage when they are based on identical facts as other claims [such as the CLRA and UTPA] providing the legal remedy of damages." *Eason v. Roman Cath. Bishop of San Diego*, 414 F. Supp. 3d 1276, 1282 (S.D. Cal. 2019) (citing *Wildin v. FCA US LLC*, No. 17-CV-2594 (GPC) 2018 WL 3032986, at \*6 (S.D. Cal. June 19, 2018); *see id.* (collecting cases). Nonetheless, California district courts have generally noted that "barring claims for equitable relief at the pleading stage is inconsistent with the federal rules that permit pleading in the alternative." *Adams*, 2021 WL 4907248, at \*4 (citing *Parrish v. Volkswagen Grp. of Am., Inc.*, 463 F. Supp. 3d 1043, 1061 (C.D. Cal. 2020); *Byton N. Am. Co. v. Breitfeld*, No. 19-CV-10563 (DMG), 2020 WL 3802700, at \*9 (C.D. Cal. Apr. 28, 2020)). The Court agrees here that it would be premature to dismiss Plaintiffs' claims for equitable restitution, particularly where the equitable claims overlap so substantially with the legal claims that dismissing the equitable claims would barely save any resources. *See Wildin,* 2018 WL 3032986, at \*7.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and

DENIED in part. By **October 14, 2025**, parties shall file a joint status update with proposals for

briefing deadlines for the motion on class certification.

Dated:  September 29, 2025
         New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge